## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 24-cv-24652-BLOOM/Elfenbein

JUAN JOSE PORTES, JUAN JOSE
PORTES, and ROMINA PORTES,

      Plaintiffs,

v.

CITY OF DORAL, ARIEL GONZALEZ, HAKIME
ST. CYR, JEAN VALEZ, JAVIER SARMIENTO,
and REGIONS SECURITY SERVICES, INC.,

      Defendants.

_____/

## <u>ORDER ON MOTIONS TO DISMISS</u>

**THIS CAUSE** is before the Court upon Defendant Regions Security Services, Inc.'s ("Regions") Motion to Dismiss, ECF No. [42], the City of Doral's ("the City") Motion to Dismiss, ECF No. [45], and Ariel Gonzalez, Hakime St. Cyr, Jean Valez and Javier Sarmiento's (collectively "Individual Officers" or "Officers") Motion to Dismiss, ECF No. [46]. Plaintiffs Juan Jose Portes, Jr, Juan Jose Portes, Sr., and Romina Portes (collectively "Plaintiffs") filed Responses in Opposition, ECF Nos. [44], [47], [48]. Regions filed a Reply, ECF No. [51], the City filed a Reply, ECF No. [49], and the Individual Officers filed a Reply, ECF No. [50]. The Court has carefully reviewed the Motions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motions are granted in part and denied in part.

## I.   BACKGROUND

### A.  Factual Background

Plaintiffs' Amended Complaint asserts eight claims: (1) false arrest/false imprisonment against Officers Ariel Gonzalez and Hakime St. Cyr (Count I); (2) excessive force in violation of

the Fourth Amendment against Officers Gonzalez, St. Cyr., and Jean Valez (Count II); (3) negligence against all Defendants, consisting of all Individual Officers, the City of Doral, Javier Sarmiento, and Regions Security Services (Count III); (4) assault against Officer Gonzalez (Count IV); (5) battery against Officers Gonzalez, St. Cyr, and Valez (Count V); (6) infliction of emotional distress against all Defendants (Count VI); (7) defamation against all Defendants (Count VII); and (8) "cruelty" and unusual punishment in violation of the Eighth Amendment against Officers Gonzalez and Valez (Count VII). ECF No. [39]. Plaintiffs seek $8,000,000.00 in compensatory damages, $2,000,000.00 in punitive damages, an administrative expunction and sealing of Plaintiff Portes, Jr.'s arrest, and a public or written apology. *Id.* at 54.

Plaintiffs' claims stem from an event at their gated apartment complex in Doral, Florida, on February 14, 2023. *Id.* at ¶ 8. On that day, Portes, Jr. was walking inside the complex and was not engaged in any illegal activity and posed no threat to himself or others. *Id.* at ¶¶ 8-9. At approximately 3:10 a.m., a Regions security guard, Kevin Escoto, placed a call to 911. *Id.* at ¶¶ 10-17. Escoto stated on the call that he saw two kids walking around but had not seen any weapons, but that "[t]hey are just walking around . . . I don't know what their intention is, but at this time of the night, I don't know." *Id.* at ¶¶ 18-21. Escoto also saw them go under the apartment gate, but also told the 911 operator that all three said they lived at the apartment complex. *Id.* ¶ 15. Escoto later clarified to Portes, Jr.'s parents that it was the other two people, not Portes, Jr., who entered under the gate. *Id.* at ¶ 26.

Officer Gonzalez from the City of Doral Police Department arrived at the apartment complex around 3:27 a.m. *Id.* at ¶ 32. Officer Gonzalez, who was wearing "a non-traditional police uniform, approached Plaintiff Mr. Portes Jr. and without identifying himself [as a police officer] called out to [Portes, Jr.] from behind . . . ." *Id.* at ¶ 33. Gonzalez then again called out to Portes,

Jr. using an expletive, causing Portes, Jr. to turn around. *Id.* at ¶ 34. Gonzalez threatened to release his dog on Portes, Jr. *Id.* at ¶ 36. Portes Jr. did not recognize Gonzalez as a police officer. *Id.* at ¶ 37. Gonzalez also did not identify himself as a police officer. *Id.* at ¶ 42.

Eventually, Portes, Jr. stopped and asked Gonzalez if he was a cop. *Id.* at ¶ 43. Gonzalez responded by saying, "I'm a fucking cop, what do you think I am?" *Id.* Portes, Jr. then put his hands up, but Gonzalez, without giving Portes, Jr. "a chance to comply or clarify anything," "immediately proceeded to manhandle him, grabbing him by the neck and pushing him down." *Id.* at ¶¶ 43, 45. Portes, Jr. then explained to Gonzalez that he lived at the apartment complex, and, while Portes, Jr. was on his knees with his hands behind his back, Gonzalez again pushed him face down into the ground. *Id.* at ¶¶ 49-50. Portes, Jr. continuously yelled for his parents. *Id.*

Gonzalez then handcuffed Portes, Jr. *Id.* at ¶ 52. After Portes, Jr. asked why he was being arrested, Gonzalez responded, "How many times did I tell you to come over here?" *Id.* at ¶ 53. While handcuffed, Portes, Jr. called out for his father; Gonzalez, however, again "slam[med] Mr. Portes[,] Jr. on the ground face first[.]" *Id.* at ¶ 50. Plaintiffs allege Gonzalez never informed Portes, Jr. he was under arrest. *Id.* at ¶ 57. At some point, another officer, Hakime St. Cyr, arrived on the scene. Portes, Jr. asked Gonzalez why he was being arrested, to which Gonzalez tells him, "for resisting," and tells St. Cyr, "and he fought me." *Id.* at ¶ 70. Portes, Jr. was then questioned by St. Cyr. *Id.* ¶¶ at 76-79. St. Cyr told Portes, Jr. that "Gonzalez was a K9 Officer" who "could have released his dog on him and that he was lucky he didn't get bit[.]" *Id.* at ¶ 85. At this time, another officer, Jean Valez, "kicked [Portes, Jr.'s] leg and twisted his arms behind his back[.]" *Id.* at ¶ 87. After his arrest, Gonzalez "went and asked the security guards if they saw the kids doing anything[.]" *Id.* at ¶¶ 89-91.

Shortly after the commotion died down, Plaintiff Romina Portes, Portes, Jr.'s mother, went outside when she realized her son was not in his room. *Id.* at ¶ 95. She eventually heard Portes, Jr. yell "Mama," at which point she saw him in a police car. *Id.* at ¶ 98.[1] Gonzalez told Romina Portes that Portes, Jr. hit and insulted Gonzalez. *Id.* at ¶¶ 98-100. Plaintiff Juan Portes, Sr. came out a few moments later. *Id.* at ¶ 106.

Instead of being transported to jail, Portes, Jr. was moved to a hospital "due to his elevated heart rate resulting from the traumatic experience of the arrest." *Id.* at ¶¶ 122-23. While at the hospital, Portes, Jr. remained handcuffed to the bed for twenty hours, resulting in scratches and swollen wrists. *Id.* at ¶¶ 138-39. Portes, Jr. was charged with resisting arrest, but the charge was eventually dismissed. *Id.* at ¶ 144.

Since his arrest, Portes, Jr. no longer takes walks outside, gets scared often, and jumps out of bed. *Id.* at ¶ 149. After seeing the recordings of the officers' body cameras, Romina Portes "cried for weeks non-stop," has "had nightmares and felt unsafe in the home they had lived in for 20 years." *Id.* at ¶ 154. Due to the incident, Plaintiffs moved out of their house and purchased a new home. *Id.* at ¶ 156.

Nearly two months later, on April 5, 2023, Plaintiffs filed a formal complaint with the Doral Police Department. *Id.* at ¶ 156. On November 3, 2023, the Doral Police Department "responded with an IA disposition letter dated August 4[, 2023], basically saying that Officer Gonzalez did nothing wrong, except us[ing] profanity." *Id.* at ¶ 159. Plaintiffs allege that Internal Affairs, including Internal Affairs Investigatory Officer Javier Sarmiento, and the various police officers, "lied with malice intent in their sworn statements defaming Portes, Jr., in an attempt to justify the arrest and Officer' Gonzalez' attack [sic]." *Id.* at ¶ 165*; see also id.* at ¶¶ 166-83.

---

[1] The Complaint does not allege when Portes, Jr. was moved to a police vehicle.

After the incident, Portes, Sr. and Romina Portes requested the security guard's report. Plaintiffs allege that Regions first refused to provide it but then took about a month to provide the report. *Id.* at ¶ 195; *see also id.* at ¶¶ 205-40. Plaintiffs further assert that Regions lied on the report, stating that Portes, Jr. was the one that entered the community under the gate arm at 1:00 a.m. *Id.* On August 7, 2023, Romina Portes sent a formal demand letter to Regions asking to settle this and sent a final demand letter on September 8th. *Id.* at ¶ 240.

### B. Defendants' Motions to Dismiss

The City of Doral moves to dismiss the counts against it on various grounds: (1) the parents lack standing; (2) the complaint is an impermissible shotgun pleading; (3) the negligence, intentional infliction of emotional distress, defamation, and punitive damages claims are barred by sovereign immunity; (4) the Amended Complaint fails to state claims for relief; and (5) the negligence claim fails to comply with the pre-suit notice requirements of Fla. Stat. § 738.28(6). *See* ECF No. [45].

The Individual Officers also assert that the parents lack standing, and the Complaint is an impermissible shotgun pleading, *see* ECF No. [46]. They argue that (1) probable cause for Portes, Jr.'s arrest defeats his false arrest/imprisonment claim; (2) the Complaint does not state a claim for excessive force under the Fourth Amendment; (3) the officers are otherwise entitled to qualified immunity for the Fourth Amendment claim; (4) the claims for assault and battery are subsumed into the false arrest/imprisonment claim; (5) the Complaint fails to state a claim for intentional infliction of emotional distress ; (6) statutory immunity bars the state law tort claims; (6) the police officers' statements were privileged and thus not subject to the defamation claim; and (7) the Eighth Amendment claim fails as a matter of law. ECF No. [46].

Regions similarly argues that the parents lack standing and move to dismiss on the basis that (1) Plaintiff's negligence claim fails because Regions' security officer, Escoto, made a good faith report of suspected criminal activity; (2) the Amended Complaint fails to state a claim under a theory of negligent infliction of emotional distress, or intentional infliction of emotional distress; and (3) the defamation claim fails because Plaintiffs have failed to show that Regions acted with express malice. ECF No. [42].

Plaintiffs respond that the Amended Complaint contains sufficient factual allegations to establish a claim upon which relief can be granted, and Plaintiffs have standing. ECF Nos. [44], [47], [48]. Regions replies that Plaintiffs' emotional distress claim warrants dismissal pursuant to the Florida Impact Rule, as well as the lack of causal nexus between the 911 call and the alleged actions taken by the police upon their arrival. ECF No. [51] at 3.

## II.   LEGAL STANDARD

### A.  Article III Standing

One element of the case-or-controversy requirement under Article III of the United States Constitution is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "The law of Article III standing serves to prevent the judicial process from being used to usurp the powers of the political branches, and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)) (alteration adopted; citations omitted). "Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redress[a]bility." *Dermer v. Miami-Dade County*, 599 F.3d 1217, 1220 (11th Cir. 2010) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)). Specifically, "[t]o have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003); *see Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005) (same). "The party invoking federal jurisdiction bears the burden of proving standing.'" *Fla. Pub. Int. Rsch. Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004) (quoting *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000)).

### B. Shotgun Pleading

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). In *Weiland*, the Eleventh Circuit identified four common types of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts," (2) a complaint guilty of "being replete with conclusory, vague, and immaterial facts," (3) a complaint that commits the sin of "not separating into a different count each cause of action or claim for relief," and (4) a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1321-23. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. "The key inquiry is whether the 'failure to more precisely parcel out and identify the facts relevant to each claim materially increase[s] the burden of understanding the factual allegations underlying each count.'"

*Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1323 (S.D. Fla. 2020) (quoting *Weiland*, 792 F.3d at 1324).

### C.  Failure to State a Claim

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez-Arriola v. White Wilson Med. Ctr. PA*, No. 3:09CV495/MCR/EMT, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019). In considering a motion to dismiss, the court is limited to the facts contained in

the complaint and attached exhibits. *See Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006).

## III.   DISCUSSION

### A.  Article III Standing

Defendants' Motions to Dismiss assert that Portes, Jr.'s parents, Portes, Sr. and Romina Portes, lack Article III standing to assert claims against Defendants because the crux of the Amended Complaint seemingly relates to the alleged wrongful arrest of Portes, Jr. on February 14, 2023, and Portes, Jr.'s interactions with the City police officers. *See* ECF No. [42] at 4-5; ECF No. [45] at 3-4; ECF No. [46] at 3-4. The Motions further contend that the parents were also in the apartment at the time the relevant events occurred and did not witness the events. *See* ECF No. [42] at 5; ECF No. [45] at 3-4; *see also* ECF No. [46] at 3-4. Plaintiffs respond that the parents have four types of injury-in-fact: (1) emotional distress from their child being arrested; (2) financial hardship from having to move from their home as a result of the incident; (3) their own reputational harm due to the reputational harm to their son; and (4) emotional pain due to the lack of an apology from Defendants. *See* ECF No. [47] at 4-5; ECF No. [42].

Portes, Jr.'s parents' alleged injuries-in-fact thus stem from their son's incident on the night of February 14, 2023. "Where a plaintiff cannot demonstrate that it has suffered an 'injury in fact' for which it may seek legal redress, rather than being a 'concerned bystander' to someone else's injury, it has no right to invoke the jurisdiction of the federal court." *Pulte Home Corp. v. Ply Gem Indus., Inc.*, 804 F. Supp. 1471, 1480 (M.D. Fla. 1992) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982)).

Portes, Jr.'s parents only connection to the events alleged is that they are Portes, Jr.'s parents. They do not allege, for example, that they were assaulted, battered, or personally defamed.

While any reasonable parent would be impacted by the events that allegedly took place (and the Court does not discount that impact), the parents' resulting injuries do not confer Article III standing. Therefore, Portes, Jr.'s parents' claims are dismissed for lack of standing.[2]

### B. Shotgun Pleading

The City and the Individual Officers argue that the Amended Complaint is an impermissible shotgun pleading because "[n]umerous paragraphs are incomplete and raise rhetorical questions that are not allegations and are borderline intelligible," and "[m]ultiple counts incorporate the preceding paragraphs and counts." *See* ECF No. [45] at 5; *see also* ECF No. [46] at 5-6. The City and the Individual Officers assert that "Counts III, VI, and VII improperly assert a singular cause of action against multiple defendants without articulating how each defendant specifically harmed Plaintiff(s)." *See* ECF No. [45] at 6; *see also* ECF No. [46] at 6.

As the Eleventh Circuit explained in *Weiland*, there are four different ways a complaint may be found to be a shotgun pleading. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). While there are several types, "the unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Here, the Court disagrees that the entirety of the Amended Complaint fails to articulate how each Defendant specifically harmed Portes, Jr. *See* ECF No. [45] at 6; *see also* ECF No. [46] at 6. While the Amended Complaint contains repetitive, immaterial, and incomplete allegations, it is not so deficient as to "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *See Weiland*, 792 F.3d at 1323. The Amended

---

[2] Because the parents are dismissed, the remainder of analysis refers solely to Portes, Jr.

Complaint clearly delineates the timeline of events, and the actors involved in each stage of the night in question. Moreover, Defendants fail to provide the Court with specific examples of how the Amended Complaint fails to give them adequate notice. *Gavillan-Martinez v. Dixon*, Case No. 3:22CV5734/LAC/ZCB, 2024 WL 1097979, at *4 (N.D. Fla. Jan. 26, 2024) ("Defendants make no attempt to tie the case law to the specific issues presented in this case, and their conclusory statements are not sufficient to support a Motion to Dismiss." (cleaned up)), *report and recommendation adopted,* No. 3:22CV5734/LAC/ZCB, 2024 WL 1094688 (N.D. Fla. Mar. 13, 2024); *see also Medina v. United Christian Evangelistic Ass'n*, No. 08-22111-CIV, 2009 WL 653857, at *4 (S.D. Fla. Mar. 10, 2009) (finding that "Defendants' conclusory arguments . . . cannot support a motion to dismiss").

However, Count VI is deficient and falls into the second and third types of shotgun pleadings. *See Weiland*, 792 F.3d at 1321-23 ("The next . . . is a complaint that . . . is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief."). Portes, Jr. asserts a claim for "Infliction of Emotional Distress," ECF No. [39] at 51, but does not specify whether he asserts a claim for negligent or intentional infliction of emotional distress, both of which have different elements and require proof of different material facts. *See Zell v. Meek*, 665 So. 2d 1048, 1054 (Fla. 1995) ("[T]he elements required to allege a cause of action for negligent infliction of emotional distress: (1) the plaintiff must suffer a physical injury; (2) the plaintiff's physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and (4) the plaintiff must have a close personal relationship to the directly injured person."); *Clemente v. Horne*, 707 So. 2d 865, 866 (Fla. 3d

DCA 1998) ("The elements for [intentional infliction of emotional distress] are: (1) the wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." (quoting *Dominguez v. Equitable Life Assurance Soc'y of U.S.*, 438 So. 2d 58, 59 (Fla. 3d DCA 1983))).

Indeed, this flaw is further illustrated in Defendants' Motions.[3] Regions makes arguments as to both theories of liability, and in its Reply, contends that Plaintiffs "categorize REGIONS' 911 call as a 'negligent act,'" and therefore proceed on the negligent infliction of emotional distress theory. *See* ECF Nos. [42] at 9-11; ECF No. [51] at 3. In contrast, the City and the Individual Officers "presume[] . . . that Plaintiff is attempting to assert an intentional infliction of emotional distress claim given the assertions of various other intentional torts within the Amended Complaint." ECF No. [45] at 11; ECF No. [46] at 15. Such form of pleading is improper, as it fails to put Defendants on notice as to the grounds upon which each claim rests. *See Litke v. P.B. Express, Inc.*, Case No. 3:23-cv-1266-MMH-PDB, 2024 WL 3634947, at *3 (M.D. Fla. June 14, 2024) (dismissing complaint as shotgun pleading where the plaintiff failed to distinguish between claims for negligent and intentional infliction of emotional distress); *Allen v. Lyons & Farra, P.A.*, Case No.: 4:19cv578-MW/MJF, 2020 WL 10728693, at *2 (N.D. Fla. July 22, 2020) (dismissing

---

[3] In response to Regions' Motion, Portes, Jr. states that "both negligent and intentional infliction of emotional distress occurred but will leave the determination of this matter to this Honorable Court." ECF No. [44] at ¶ 19. Although courts must "construe pro se pleadings liberally, holding them to a less stringent standard than those drafted by attorneys," *Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018) (citing Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)), a *pro se* party must still abide by "the relevant law and rules of court," *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

complaint as shotgun pleading where the plaintiff commingled claims for negligent and intentional infliction of emotional distress).

Portes, Jr. must specify whether he asserts a claim for negligent infliction of emotional distress or intentional infliction of emotional distress. While it may be true that Portes, Jr. intends to state a negligent infliction of emotional distress claim against Regions and an intentional infliction of emotional distress claim against the City and the Individual Officers, distinct causes of action must be pled separately. *See Litke*, 2024 WL 3634947, at *3 ("These are distinct causes of action that must be pled separately."). Accordingly, Count VI is dismissed.

### C.  Regions' Motion to Dismiss

Portes, Jr. asserts three claims against Regions: negligence (Count III), infliction of emotional distress (Count VI), and defamation (Count VII). *See* ECF No. [39] at 47-53. Regions seeks to dismiss both the negligence and defamation claim, arguing that Portes, Jr. fails to state a claim as to Regions. ECF No. [42]. The Court addresses each argument in turn.

### i.  Negligence

At the outset, Regions asserts that, although not entirely clear because the Amended Complaint asserts a general negligence claim, "the thrust of the negligence claim asserted against [Regions] is largely based on [Regions] having called 911 after observing what they believed was suspicious activity." ECF No. [42] at 6. Regions further asserts that "[t]he negligence claim . . . largely appears to accuse [Regions] of making a false report to the police, while also alleging improper training and supervision." *Id.* Regions contends the Court should dismiss Portes, Jr.'s negligence claim because Regions made a "mistaken, but good faith report of suspected criminal activity." ECF No. [42] at 7.

Portes, Jr. responds that the Motion should be denied because Regions' security officer made misleading statements that were "largely speculative, incorrect, negligent, and malicious," during the 911 call. ECF No. [44] at ¶ 13. Specifically, Portes, Jr. contends that Escoto, the Regions' employee who made the 911 call, contradicted himself multiple times and lied. *Id.* at ¶ 15.

In *Valladares v. Bank of America Corp.*, 197 So. 3d 1, 11 (Fla. 2016), the court held that "a cause of action for negligent reporting arises when there is incorrect reporting plus conduct on the part of the reporting party that rises to the level of the punitive conduct."

> The conduct required to allege punitive conduct . . . must be of a "gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them."

*Id.* (quoting *Owens-Corning Fiberglas Corp. v. Ballard*, 749 So. 2d 483, 486 (Fla. 1999)). Stated differently, "[p]ublic policy supports a limited immunity for those who make innocent, simple mistakes, but that limited immunity cannot extend to conduct that recklessly disregards the rights of others." *Id.* at 12. Indeed, "the wrongful act must be characterized by some circumstance of aggravation, such as willfulness, recklessness, maliciousness, outrageous conduct, oppression or fraud." *Am. Motors Corp. v. Ellis*, 403 So. 2d 459, 467 (Fla. 5th DCA 1981).

Portes, Jr.'s allegations fall short of this standard. The Amended Complaint asserts that Escoto stated to dispatch that "[t]here are 2 kids walking around . . . they went under the gate, but they said they live here, they don't want to stop and just keep circling around. . . . I don't know if they have any weapons, they have their hands inside[.]" ECF No. [39] at ¶¶ 15-19. Further, Escoto stated that "[t]hey are just walking around, is like they are checking the perimeter, I don't know if

they are trying to open cars, I don't know what their intention is, but at this time of the night, I don't know[.]" *Id.* at ¶ 21. In his Response, Portes, Jr. contends that Escoto lied because he told the officers that Portes, Jr. "was looking all around with a flashlight," but later "contradicted himself multiple times" and stated that Portes, Jr. "was not actually looking into cars[.]" ECF No. [42] at ¶ 15. However, the Amended Complaint states that "Escoto said Mr. Portes Jr. was looking all around with a flashlight, never said he was looking into cars." ECF No. [39] at ¶¶ 89, 120.

Taking the facts in the Amended Complaint as true, Regions' actions do not rise to the level necessary to overcome the qualified privilege set forth in *Valladares*, as Escoto's conduct was not "so reckless or wanting in care" as to amount to "conscious indifference" for Portes, Jr.'s "life, safety, or rights." *Owens-Corning Fiberglas Corp.*, 749 So. 2d at 486; *see also Clarke v. Phelan*, Civil Action No. 16-25217-Civ-Scola, 2017 WL 4326522, at *8 (S.D. Fla. Sept. 28, 2017) (concluding the plaintiff stated a claim for negligent reporting where the plaintiff alleged that the defendants "engaged in a scheme to harass and bully anyone standing in the way . . . [and] concocted a story . . . that [the plaintiff] drove her car over a neighbor's curb and falsely reported the level of damage to the sidewalk construction in order to ensure that [the plaintiff] would be charged with a felony.").

Further, Plaintiffs' argument that Regions intentionally falsely reported Portes, Jr. to the police is inconsistent with Plaintiffs' allegations. The Amended Complaint is devoid of any "circumstance of aggravation" on the part of Regions. *See Harapeti v. City of Miami Beach*, CASE NO. 1:23-cv-24018-LEIBOWITZ, 2024 WL 5442846, at *4 (S.D. Fla. Nov. 22, 2024) ("[E]ven making a false report intentionally to police (without more) does not carry the day. . . . The wrongful act must be accompanied by some circumstance of aggravation not present here." (internal quotation omitted)); *Lozada v. Hobby Lobby Stores, Inc.*, 702 F. App'x 904, 913-14 (11th

Cir. 2017) (concluding that there was insufficient evidence to overcome the qualified privilege where the alleged misrepresentations made by the defendant did not amount to recklessness). Accordingly, Regions' Motion is granted.[4]

### ii. Defamation

Regions argues that Portes, Jr.'s defamation claim should be dismissed because Regions enjoins a qualified privilege for statements made to the police. ECF No. [42] at 11. Portes, Jr. does not directly address this issue, but argues that he has "outlined in the[] complaint the false and harmful statements, both libel and slander, that were made by a [Regions] employee," and that "statements were communicated to a third party, thus causing injury to plaintiffs' reputation[.]" ECF No. [44] at ¶ 4.

Defamation requires proof of: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Nevertheless, "[D]efamatory statements voluntarily made by [a] private individual[] to the police . . . prior to the institution of criminal charges are presumptively qualifiedly privileged." *Lozada*, 702 F. App'x at 912 (quoting *Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992)). This presumption can be overcome if the plaintiff establishes that the defendant acted with express malice in making the defamatory statements. *Id.* at 911. "A defendant acts with express malice in making defamatory statements when his 'primary motive in making the statements [is] the intent to injure the

---

[4] As recognized by Regions, the Amended Complaint "also alleg[es] improper training and supervision. ECF No. [42] at 6. Regions makes no argument on the issue. *See Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019) ("Generally, a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him." (internal quotations and citation omitted)).

reputation of the plaintiff.'" *Id.* (quoting *Fridovich*, 598 So. 2d at 69); *see also Lewis v. Evans*, 406 So. 2d 489, 492 (Fla. 2d DCA 1981) (express malice is "ill will, hostility and an evil intention to defame and injure.").

Here, even assuming the elements for defamation are satisfied, the qualified privilege applies. The Amended Complaint asserts that Regions "owed a duty to speak the truth about the Plaintiff[] and the events that took place the night of the incident[,]" and breached that duty "by lying to Plaintiffs and lying about Plaintiffs to others, the night of the incident and thereafter, by producing false written reports and false statements[.]" ECF No. [39] at ¶¶ 283-84. Nonetheless, the only "statements" and "written reports" made by Regions, as alleged in the Amended Complaint, were made to the police. Indeed, Portes, Jr. alleges that Regions' security officer, Escoto, was the one who made the 911 call, spoke with the Individual Officers on the night of the incident, and provided statements to the police during the City's internal affairs investigation. *See, e.g.*, *id.* at ¶¶ 12-26, 89-90, 190-91. The Amended Complaint contains no other allegations pertaining to defamatory statements made by Escoto, or another Regions employee.

Further, Portes, Jr. fails to allege that Regions acted with express malice. In the Response, Portes, Jr. asserts that "Escoto did falsely, and misleadingly, with malicious intent, stated [sic] '[h]e was looking all around with a flashlight." ECF No. [44] at ¶ 15 (emphasis omitted). Portes, Jr. also argues that Escoto's statements during the 911 call were "largely speculative, incorrect, negligent, and malicious," and "[t]he security guard's desire to remain anonymous further suggests malicious intent." *Id.* at ¶ 13. At the outset, the Court notes that Portes, Jr.'s conclusory allegations that Escoto acted with malice and lied are insufficient to survive a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" (internal quotation omitted)).

Nevertheless, "[w]hile malice may be inferred from the communication, it is not inferable from the mere fact that the statements are untrue." *Gunder's Auto Ctr. v. State Farm Mut. Auto. Ins. Co.*, 422 F. App'x 819, 821 (11th Cir. 2011) (quoting *Nodar v. Galbreath*, 462 So. 2d 803, 810 (Fla. 1984)); *see also Regions Bank v. Kaplan*, No. 17-15478, No. 18-13220, 2021 WL 4852268, at *12 (11th Cir. Oct. 19, 2021) ("Strong, angry, or intemperate words do not alone show express malice; rather, there must be a showing that the speaker used his privileged position to 'gratify his malevolence.'" (quoting *Nodar*, 462 So. 2d at 811) (alteration in original)). Thus, even taking Portes, Jr.'s allegations that Escoto lied as true, the Amended Complaint fails to allege that Regions' "primary motive" was to injure Portes, Jr., and that Regions acted with "evil intention." Rather, the Amended Complaint, at most, questions Escoto's reasoning for reporting Portes, Jr., not that Escoto "used his privileged position to 'gratify his malevolence.'" *See* ECF No. [39] at ¶ 190 ("It's strange [Escoto] could lie like that in his sworn statement . . . he either, also wants to help the police, as this security company seems to work hand in hand with police, or he is just nuts, probably both."); *see also Regions Bank*, 2021 WL 4852268, at *12 (concluding that Kaplan failed to allege express motive where the complaint demonstrated that the Bank was not "following its own procedures" in reporting Kaplan and was "motivated in part by a desire 'to distract attention' from its financial losses"). The Amended Complaint, as alleged, falls squarely into the actions protected by the qualified privilege. Accordingly, Regions' Motion at to Count III is granted.

### D. City of Doral's Motion to Dismiss

Portes, Jr. asserts three claims against the City: negligence (Count III), infliction of emotional distress (Count VI), and defamation (Count VII). *See* ECF No. [39] at 47-53. The City

contends that the claims against it should be dismissed as the City is immune, and the claims are substantively and procedurally deficient. *See generally* ECF No. [45].[5]

### i. Negligence

In Count III, Portes, Jr. asserts a negligence claim against the City for "fail[ure] to properly train and supervise Defendants Officer Ariel Gonzalez, Hakime St. Cyr, and Jean Vales, resulting in the wrongful arrest and excessive force used on Plaintiff Mr. Portes Jr." ECF No. [39] at ¶ 261. The City contends this claim is barred by sovereign immunity. *See* ECF No. [45] at 8-10. Portes, Jr. responds that the City is not immune because "municipalities can be held liable under § 1983 when the alleged constitutional violation results from a policy, custom, or practice of the municipality, or from a failure to train its employees adequately in a manner that amounts to deliberate indifference." *See* ECF No. [48] at 3 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).

Critically, however, Portes, Jr. asserts a *state law* negligence claim against the City and "[u]nlike § 1983 claims, state law negligence claims are subject to the doctrine of sovereign immunity to a limited extent." *Waters v. City of Sunrise*, No. 21-CV-62542, 2022 WL 1001488, at *9 (S.D. Fla. Apr. 3, 2022) (citing Fla. Stat. § 768.28; *Com. Carrier Corp. v. Indian River County*, 371 So. 2d 1010, 1020 (Fla. 1979)). Thus, *Monell* does not apply.

"Under Florida law, for sovereign immunity to apply, the challenged conduct must involve an exercise of executive or legislative power such that a court's intervention would inappropriately entangle in fundamental questions of policy and planning." *Id.* (citing *Beach Cmty. Bank v. City of Freeport, Fla.*, 150 So. 3d 1111, 1114 (Fla. 2014)). "The Florida Supreme Court has held that

---

[5] Portes, Jr. also seeks $2,000,000.00 in punitive damages. *See* ECF No. [39] at 54. In his Response to the City's Motion, Portes, Jr. clarifies that he does not seek punitive damages against the City. *See* ECF No. [48] at 3. Therefore, the City's Motion as to punitive damages is denied as moot.

governmental liability does not exist when the challenged act of the government or its agent is 'discretionary' in nature." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1264 (11th Cir. 2001) (citing *Kaisner v. Kolb*, 543 So. 2d 732, 736 (Fla. 1989)). Florida municipalities are immune from state law negligent training and supervision claims because they seek to challenge "discretionary governmental functions [immune from tort liability.]" *Id.* at 1266 (quoting *Everton v. Willard*, 468 So. 2d 936, 937 (Fla. 1985)); *see also Waters*, 2022 WL 1001488, at *9-10 (finding City of Sunrise immune from negligent supervision and training claims).

Therefore, the City is immune from Portes, Jr.'s negligence claim as it seeks to hold the City liable for "failing to properly train and supervise" the officers involved in Portes Jr.'s arrest. *See* ECF No. [39] at ¶¶ 260-61. As such, Portes, Jr. seeks to hold the City liable "for discretionary decisions subject to sovereign immunity." *Waters*, 2022 WL 1001488, at *10 (citing *Lewis*, 260 F.3d at 1265). The Court dismisses Count III against the City.

### ii. Defamation

In Count VII, Portes, Jr. asserts a defamation claim against the City. *See* ECF No. [39] ¶¶ 282-85. The City contends it is likewise immune from this claim. *See* ECF No. [45] at 12-13. Portes, Jr. does not respond to this argument.

Under Florida law, "public officials who make statements within the scope of their duties are absolutely immune from suit for defamation." *Cassell v. India*, 964 So. 2d 190, 194 (4th DCA 2007) (quoting *Stephens v. Geoghegan*, 702 So. 2d 517, 522 (Fla. 2d DCA 1997)) (cleaned up). "The privilege extends to police officers" and "all public officials, regardless of the branch of government or the level of the official." *Id.* (citations omitted). "The controlling factor in deciding whether the absolute privilege applies is 'whether the communication was within the scope of the officer's duties.'" *Id.* (quoting *City of Miami v. Wardlow*, 403 So. 2d 414, 416 (Fla. 1981)). "The

scope of an officer's duties to be liberally construed," and "'duties' is not confined to those things required of the officer, but rather extends to all matters which he is authorized to perform." *Id.* (citations omitted). As relevant here, "[i]f a city official has absolute immunity against claims for defamation, then the city cannot be liable for defamation where the liability against the City is premised on *respondeat superior*." *Medina v. City of Hialeah*, No. 02-20957-CIV, 2003 WL 1562281, at *2 (S.D. Fla. Mar. 24, 2003) (citation omitted).

While Portes, Jr. does not respond to the City's immunity argument, his Response to the Individual Officers' Motion makes clear that the defamation claim against the City must be dismissed. Portes, Jr. asserts that the Officers "made false statements both on the day of the incident [] (verbal and written on the arrest affidavit) and in their sworn internal affairs statements[.]" ECF No. [47] at 13. Such statements fall squarely into the duties of the Individual Officers and therefore the Officers are immune from Plaintiffs' defamation claim. *See Cassell*, 964 So. 2d at 194. Because Portes, Jr. attempts to hold the City liable for the privileged statements made by its employees, the City is likewise immune from Portes, Jr.'s defamation claim, and the claim is dismissed. *See Medina*, 2003 WL 1562281, at *2 (citation omitted).

### D. Individual Officers' Motion to Dismiss

Portes, Jr. asserts eight claims against the Individual Officers: (1) false arrest/imprisonment against Gonzalez and St. Cyr (Count I); (2) excessive force in violation of the Fourth Amendment against Gonzalez, St. Cyr and Valez (Count II); (3) negligence against Gonzalez, St. Cyr, Valez and Sarmiento (Count III); (4) assault against Gonzalez (Count IV); (5) battery against Gonzalez, St. Cyr and Valez (Count V); (6) intentional infliction of emotional distress against Gonzalez, St. Cyr, Valez, and Sarmiento (Count VI); (7) defamation against Gonzalez, St. Cyr, Valez, and Sarmiento (Count VII); and (8) cruelty and unusual punishment in violation of the Eighth

Amendment against Gonzalez and Valez (Count VIII). *See generally* ECF No. [39] at 46-54. The Individual Officers assert that they are immune from certain claims, and the claims are substantively and procedurally deficient. *See generally* ECF No. [46].

### i.   False Arrest/Imprisonment

### a.   Portes, Jr.'s False Arrest/Imprionsment Claim

Count I of Portes, Jr.'s Amended Complaint alleges a false arrest/imprisonment claim against Officers Gonzalez and St. Cyr. *See* ECF No. [39] at ¶¶ 249-53. Both Gonzalez and St. Cyr contend that Count I should be dismissed because there was probable cause for Portes, Jr.'s arrest, while St. Cyr argues that Count I should be dismissed because, as the backup officer, he did not arrest Portes, Jr. *See* ECF No. [46] at 6-9. Portes, Jr. responds that there was no probable cause that he committed any crime, and St. Cyr "took custody of Plaintiff Portes, Jr. and drove him away in his patrol vehicle without witnessing any crime himself." *See* ECF No. [47] at 7.

"[U]nder Florida law, false arrest and false imprisonment are nearly indistinguishable where, as here, they are applied to a police officer's arrest and detention of a suspect." *Id.* (citation omitted). False arrest or imprisonment is "the unlawful restraint of a person against that person's will." *Willingham v. City of Orlando*, 929 So. 2d 43, 48 (5th DCA 2006). "Probable cause is an affirmative defense" to false arrest and imprisonment claims. *See Gomez v. Lozano*, 839 F. Supp. 2d 1309, 1317 (S.D. Fla. 2012) (citations omitted).

"The standard for assessing probable cause is the same under both federal and Florida law." *Rebalko v. City of Coral Springs*, No. 19-60569-CIV, 2020 WL 6446042, at *10 (S.D. Fla. Nov. 3, 2020) (citing *Davis v. City of Apopka*, 734 F. App'x 616, 621 (11th Cir. 2018)). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was

committing a crime." *Id.* (quoting *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137 (11th Cir. 2007)). "Whether an arresting officer possesses probable cause . . . naturally depends on the elements of the alleged crime and the operative fact pattern." *Id.* (citing *Skop*, 485 F.3d at 1137-38 (alteration in original)). Moreover, "[p]robable cause for an arrest exists when an eyewitness reports witnessing a crime to police." *Foreman v. City of Port St. Lucie*, 294 F. App'x 554, 557 (11th Cir. 2008).

Taking Portes, Jr.'s allegations as true and in the light most favorable to Portes, Jr., no probable cause existed for his arrest. According to the Amended Complaint, the "eyewitnesses" and security guard did not witness any crime; rather, Portes., Jr. and the other individuals with him "looked suspicious" and "just ke[pt] circling around." *See* ECF No. [39] at ¶¶ 12, 15. The security guard, Escoto, affirmatively told the 911 operator that he did not see them with any weapons. *Id.* ¶¶ 20-21. Escoto also told the 911 operator that the "kids" told him they lived at the apartment complex. *Id.* ¶ 15. Therefore, taking the Amended Complaint as true and in the light most favorable to Portes, Jr., the eyewitnesses did not describe the witnessing of any criminal activity.

Moreover, the interactions between the Individual Officers and Portes, Jr., as alleged in the Amended Complaint, do not demonstrate probable cause for a crime being committed. As the officers concede in their briefing, the Amended Complaint only alleges that Portes, Jr. "'ignored' and 'walked' away from Gonzalez as Gonzalez approached him." *See* ECF No. [46] at 7-8 (citing ECF No. [39] at ¶¶ 32-37). Portes, Jr. also alleges that Gonzalez did not identify himself as a police officer and was wearing "a non-traditional police uniform." *See* ECF No. [39] at ¶ 33. After a brief interaction, in which "Officer Gonzalez did not give Mr. Portes Jr. a chance to comply or clarify anything," Gonzalez "immediately proceeded to manhandle him, grabbing him by the neck and pushing him down." *Id.* at ¶ 45. Based on those allegations, Gonzalez did not have probable cause

Case No. 24-cv-24652-BLOOM/Elfenbein

to arrest Portes, Jr. for any crime, including resisting an arrest. Further, despite St. Cyr's argument to the contrary, *see* ECF No. [46] at 9, there are factual allegations linking St. Cyr to Portes, Jr.'s false arrest/imprisonment. The Amended Complaint alleges that Portes, Jr. was subsequently questioned and restrained by Officer St. Cyr without probable cause. *See* ECF No. [39] at ¶¶ 76; 79; 87.[6]

Notably, the Individual Officers do not attempt to identify a single crime for which they had probable cause to arrest Portes, Jr. until the filing of their Reply, in which the Individual Officers generally assert that they received "a call involving potential trespassing and illegal behavior." *See* ECF No. [50] at 4-5. But Escoto told the 911 operator that the kids "said they live here[.]" *See* ECF No. [39] at ¶ 15.

The Officers argue that it is not their burden to identify any potential crime. *See* ECF No. [50] at 3. However, probable cause is an *affirmative* defense and the facts as alleged do not show probable cause existed. *See Mailly v. Jenne*, 867 So. 2d 1250, 1251 (Fla. 4th DCA 2004) (citation omitted); *see also* ECF No. [46] at 7 (acknowledging that probable cause is an affirmative defense). Therefore, Portes, Jr. states a claim against the Individual Officers for false arrest/imprisonment.

### b. Statutory Immunity

The Individual Officers argue that statutory immunity bars Portes, Jr.'s state law claims. *See* ECF No. [16] at 16-20.

---

[6] Officer St. Cyr most likely had probable cause for his subsequent restraint of Portes, Jr. because he relied on Officer Gonzalez's version of events, in which Gonzalez told St. Cyr that Portes, Jr. fought Gonzalez. *See* ECF No. [39] at ¶ 79. One officer's reliance on another officer's version of events is most likely reasonable, and Gonzalez's version of events (if true) would mean that Portes, Jr. committed an assault on Gonzalez and resisted arrest. However, St. Cyr did not make this argument in the Motion to Dismiss and he "thus waived any such argument—at least until summary judgment." *Rebalko*, 552 F. Supp. 3d at 1308 n.9 (citations omitted).

Portes, Jr.'s false arrest/imprisonment claim is not barred by sovereign immunity. Fla. Stat.

§ 768.28(9)(a) states that:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held
> personally liable in tort or named as a party defendant in any action for any injury or
> damage suffered as a result of any act, event, or omission of action in the scope of her or
> his employment or function, unless such officer, employee, or agent acted in bad faith or
> with malicious purpose or in a manner exhibiting wanton and willful disregard of human
> rights, safety, or property.

First, the Officers argue that Portes, Jr.'s allegation that the Officers were acting in the

course and scope of their employment alone "requires dismissal of the state law tort claims against"

them. *See* ECF No. [46] at 17. That is incorrect. As the plain language of the § 768.28 indicates,

an officer who is acting "in the scope of her or his employment or function" is nevertheless liable

for his or her misconduct if he or she "acted in bad faith or with malicious purpose or in a manner

exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. §

768.28(9)(a).

Second, courts have held that Florida false imprisonment claims are not barred by statutory

immunity when the allegations or record support a finding that the officers acted in bad faith or

with wanton and willful disregard for human rights. *See Doe v. Baker County*, No. 3:23-CV-

00609-CRK-LLL, 2025 WL 834340, at *10 (M.D. Fla. Mar. 17, 2025) (declining to dismiss a false

imprisonment claim where the plaintiff "has alleged enough to plausibly assert that [the officers]

acted with wanton and willful disregard"); *Montanez v. Celaya*, 49 F. Supp. 3d 1010, 1022 (M.D.

Fla. 2014) (declining to apply statutory immunity to a false arrest/imprisonment claim where "the

Court determine[d] that the Amended Complaint contains allegations rising to the level of bad

faith or willful and wanton disregard for [the plaintiff's] safety and human rights."); *Baxter v.

Roberts*, 54 F.4th 1241, 1272 (11th Cir. 2022) (declining to dismiss a false imprisonment claim

based on statutory immunity because "[o]n this record, we think a reasonable jury could find that

Deputy Lee falsely imprisoned Baxter with malice"). Here, Portes, Jr.'s allegations that Gonzalez and the other Officers continued to use force against him even though Portes Jr. never resisted arrest could amount to "willful and wanton disregard of [Portes, Jr.'s] safety and human rights." *See Montanez*, 49 F. Supp. 3d at 1022.

Therefore, the Officers' Motion as to Count I is denied.

### ii. Excessive Force Claim

Count II asserts a claim of excessive force in violation of the Fourth Amendment of the U.S. Constitution against Gonzalez, St. Cyr and Valez, *See* ECF No. [39] ¶¶ 254-58. The Officers contend that Portes, Jr. (1) fails to allege that unreasonable force was used against him, (2) the arrest was justified so that the search incident to the arrest was likewise justified, and (3) that the claim is otherwise barred by qualified immunity. *See* ECF No. [46] at 9-13. Portes, Jr. responds that he "had the right to resist an unlawful arrest, as there was no warrant or probable cause, and he was unaware he was being arrested." *See* ECF No. [47] at 9.

### a. Portes, Jr.'s Fourth Amendment Claim

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Rebalko*, 552 F. Supp. 3d at 1316 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002)). "The question is whether 'the force used to effect a particular seizure is "reasonable"' under the Fourth Amendment." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). To assess whether the use of force was reasonable, courts consider "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Stephens v. DeGiovanni*, 852 F.3d 1298, 1321 (11th Cir. 2017) (cleaned up)). In evaluating these factors,

"courts are to be mindful that officers make split-second decisions in tough and tense situations." *Williams v. Miami-Dade County*, 740 F. Supp. 3d 1219, 1233 (S.D. Fla. 2024) (quoting *Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013) (cleaned up)).

Yet, "the Eleventh Circuit 'has repeatedly found it clearly established under the Fourth Amendment that officers may not use excessive force against a non-resisting suspect who has already been subdued." *Rebalko*, 552 F. Supp. 3d at 1315-16 (quoting *Cendan v. Trujillo*, 779 F. App'x 688, 690 (11th Cir. 2019)). Going a step further, "the Eleventh Circuit has made clear 'that where a detainee is not resisting arrest, gratuitous use of force—even a single punch—is excessive." *Id.* at 1316 (quoting *Quinette v. Reed*, 805 F. App'x 696, 705 (11th Cir. 2020)).

Applying those principles here, the Court finds that Portes, Jr. has stated a claim for excessive force under the Fourth Amendment. The Officers argue that Portes, Jr. "conclusorily alleges that Gonzalez used excessive force against him . . . when Plaintiff was detained after 'walking away,' from Gonzalez, 'resisting' and 'fighting.'" ECF No. [46] at 10 (quoting ECF No. [39] at ¶¶ 50, 54-55). But Portes, Jr. alleges much more. Portes, Jr. alleges that he was walking away from Gonzalez after Gonzalez failed to identify himself as a police officer. *See, e.g.*, ECF No. [39] at ¶ 38. Then, after Gonzalez failed to "give Mr. Portes Jr. a chance to comply or clarify anything," Gonzalez "manhandl[ed] him, grabbing him by the neck and pushing him down." *Id.* at ¶ 45. He did this while Portes Jr. had his hands raised and was apologizing for the misunderstanding. *See id.* ¶ 47. Gonzalez then "push[ed] him again to lay him face down on the ground." *Id.* at ¶ 50. Gonzalez's only reasoning for doing so was that he told Portes, Jr. "to come over here," but Portes, Jr. failed to do so. *Id.* at ¶ 53. Portes, Jr.'s conduct, as alleged, does not amount to resisting arrest. Moreover, after Portes, Jr. was already restrained, Valez allegedly "kicked [Portes, Jr.'s] leg and twisted his arms behind his back." *See id.* at ¶ 87.

Those facts, standing alone, support Portes, Jr.'s excessive force claim because they demonstrate a "gratuitous use of force" despite Portes, Jr. not resisting arrest and the continuous use of force against him even after he was seized. *See, e.g.*, *Quinette*, 805 F. App'x at 705; *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (finding excessive force when there was a "single punch to the stomach" of a non-resisting detainee). However, other allegations also support a finding of excessive force. Even under the Officers' version of events, Portes, Jr.'s underlying conduct amount to, at most, probable cause for trespassing. *See* ECF No. [50] at 4-5. Gonzalez's use of force for a low-severity crime, with allegations demonstrating that Portes, Jr. did not pose a threat to the officers or civilians, supports a finding of excessive force. *See Stephens*, 852 F.3d at 1321; *see also Rebalko*, 552 F. Supp. 3d at 1316 (declining to dismiss a Fourth Amendment excessive force claim because the plaintiff "after all, is alleged only to have committed a traffic infraction and a non-violent misdemeanor").

As to St. Cyr and Valez, their only argument is that they did not violate the Fourth Amendment because they searched Portes, Jr. incident to a lawful arrest. *See* ECF No. [46] at 10. However, that argument is unavailing considering the Court's finding that the Amended Complaint alleges an unlawful arrest took place and that Valez was violent toward Portes, Jr. while he was restrained. *See* ECF No. [39] at ¶ 87. Portes, Jr. thus states a Fourth Amendment excessive force claim against Gonzalez, St. Cyr and Valez.

### b. Qualified Immunity

For similar reasons, the Officers are not, at the motion-to-dismiss stage, entitled to qualified immunity on Portes, Jr.'s Fourth Amendment claim. "The defense of qualified immunity represents a balance between the need for a damages remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without the

fear of constant baseless litigation." *Keating v. City of Miami*¸ 598 F.3d 753, 762 (11th Cir. 2010) (quoting *GJR Invs., Inc. v. County of Escamba, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998)). Therefore, government officials are protected by qualified immunity when they are "acting within their discretionary authority . . . unless the official's conduct 'violates clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine if an officer is entitled to qualified immunity, the Court must engage in a two-part test: (1) "whether the plaintiff's allegations, if true, establish a constitutional violation;" and (2) "whether the constitutional violation was clearly established." *Id.* (citations omitted).

As explained above, Portes, Jr.'s allegations support a finding of excessive force in violation of the Fourth Amendment. The Eleventh Circuit "has repeatedly found it clearly established under the Fourth Amendment 'that officers may not use excessive force against a non-resisting suspect who has already been subdued." *Cendan*, 778 F. App'x at 690 (denying qualified immunity at summary judgment stage where "a reasonable jury could conclude that Appellants gratuitously used force against him after he had been subdued and handcuffed and was no longer resisting") (emphasis added); *see also Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014) ("We have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands."). The rationale of those cases is arguably stronger here, given that Portes Jr. alleges that he was not resisting arrest when the Individual Officers first used force against him.

Accepting Portes, Jr.'s allegations as true, the Individual Officers have not established they are entitled to qualified immunity. Accordingly, the Motion as to Count II is denied.

### iii.  Negligence Claim

The Individual Officers contend that Portes, Jr.'s negligence claim is barred by sovereign immunity. *See* ECF No. [16] at 16. Portes, Jr. does not respond to the Individual Officers' argument.

"In Florida, a public officer is immune from liability for acts committed in the scope of his employment unless he acted 'in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard for human rights, safety, or property." *Diaz v. Miami-Dade County*, 424 F. Supp. 3d 1345, 1361 (S.D. Fla. 2019), *aff'd,* 849 F. App'x 787 (11th Cir. 2021) (quoting Fla. Stat. § 768.29(9)(a)). "Mere negligence is not enough to satisfy the 'wanton and willful disregard' standard;" rather, "Florida courts interpret the statute to require 'actual malice, where the conduct is worse than gross negligence, and more reprehensible and unacceptable than mere intentional conduct." *Id.* (quoting *Barnett v. MacArthur*, 715 F. App'x 894, 904 n.9 (11th Cir. 2017) (cleaned up)).  In the Amended Complaint, Portes, Jr. asserts that the Individual Officers acted negligently conducting the arrest of Portes, Jr., and the internal affairs investigation. *See* ECF No. [39] at ¶ 264-65.  Portes, Jr. does not allege that the Individual Officers acted with "actual malice," and thus, Portes Jr.'s negligence claim against the officers is barred by sovereign immunity. *See Pena v. Marcus*, 715 F. App'x 981, 989 (11th Cir. 2017) ("By its own terms, § 768.28 protects officers from negligence-based claims.").

### iv.  Assault and Battery Claims

Portes Jr. also asserts an assault claim against Gonzalez (Count IV) and a battery claim (Count V) against each officer. *See* ECF No. [39] at ¶¶ 269-72; 273-77. The Individual Officers believe that these claims are subsumed into the false imprisonment claim and should therefore be dismissed. *See* ECF No. [46] at 13-14. Portes, Jr. does not respond to this argument.

The basis for those claims is that Portes Jr. was falsely imprisoned. *See* ECF No. [39] at ¶ 270 (for assault claim, alleging that Gonzales "owed a duty of care . . . to use the weapons and tools available to him only upon the presence of probable cause); *id.* at ¶ 275 (for battery claim, alleging that "[i]n the absence of probable cause, an arrest is unlawful and the use of force becomes battery"). Therefore, these claims are subsumed into the false imprisonment claim and are dismissed with prejudice.[7] *See Papa v. City of N. Miami Beach*, Case No. 06-61833-C.V., 2007 WL 9701041, at *4 (S.D. Fla. Apr. 2, 2007) ("[T]he correct analysis is that the assault and trespass claims are subsumed in the false imprisonment claim . . . Should Plaintiff ultimately prevail on his false imprisonment claim, the damages for the assault and trespass will be included in the calculation of damages for the false imprisonment." (citing *Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1331-32 (11th Cir. 2006); *Williamson v. Mills*, 65 F.3d 155, 158–59 (11th Cir. 1995))); *Gregory v. Miami-Dade County*, 86 F. Supp. 3d 1333, 1339 (S.D. Fla. 2014) ("Essentially, Plaintiffs allege excessive force and battery in the context of an illegal stop or seizure. Thus, by operation of law, Plaintiffs['] claims for excessive force and battery are subsumed within their claim for false imprisonment." (citing *Jackson v. Sauls*, 206 F.3d 1156, 1170-71 (11th Cir. 2000))). Accordingly, the Officers' Motion is granted as to Counts IV and V.

### v. Defamation Claim

Portes, Jr. also asserts a defamation claim against Defendants (Count VIII). *See* ECF No. [39] at ¶¶ 282-85. However, the Individual Officers' statements are privileged, and the Officers are immune from any defamation claim. Therefore, Individual Officers' Motion is granted as to Count VII.

---

[7] Because the claims are dismissed, the Court need not decide whether they are barred by sovereign immunity.

### vi.  Cruel and Unusual Punishment Claim

Finally, Portes Jr. brings an Eighth Amendment cruel and unusual punishment claim against Gonzalez and Valez (Count VIII). *See* ECF No. [39] at ¶¶ 286-89. However, "the Eighth Amendment . . . applies only after a citizen has been convicted of a crime." *Weiland*, 792 F.3d at 1328 (citation omitted); *Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1381 (11th Cir. 2019) ("Eighth Amendment challenges are generally not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine." (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th Cir. 1995))). Portes, Jr. never alleges that the mistreatment occurred after a conviction took place; rather, the mistreatment stems from the Officers' treatment of Portes, Jr. the night of his arrest. *See* ECF No. [39] at ¶¶ 288-89. In fact, Portes, Jr. notes that the charges against him were dropped. *Id.* at ¶ 144. Therefore, the Officers' Motion is dismissed as to Count VIII.

### E.  Leave to Amend

Leave to amend should be "freely given" absent a showing of "futility of amendment." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Amendment is futile "when the complaint as amended is still subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999).

Even if amended, Counts IV, V, VII, and VIII, are subject to dismissal. Further, Count III is dismissed with prejudice as to the Individual Officers, but allowing amendment of Portes, Jr.'s negligence claim against the City and Regions would not be futile. Portes, Jr. is proceeding *pro se* and his Complaint should be liberally construed. *See Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018) (stating that courts must "construe pro se pleadings liberally, holding them to a

less stringent standard than those drafted by attorneys." (citing *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003))). As to Regions, Portes, Jr. alleges that Regions "failed to properly train and supervise Security Guard Kevin Escoto." ECF No. [39] at ¶ 267. Further, in his Response, Portes, Jr. argues that Regions' "training on identifying what constitutes 'suspicious' behavior is flawed." ECF No. [44] at ¶¶ 12, 14. Regions made no argument on this point, and thus, to the extent that Portes, Jr. seeks to bring a claim for negligent training, the Court grants leave to do so. As to the City, Portes, Jr. referred to 42 U.S.C. § 1983 liability when defending his negligence claim against the City. *See, e.g.*, ECF No. [48] at 5-6. Thus, "[i]f [Portes, Jr.] is able to allege prior incidents to establish Defendant's subjective knowledge of the dangers of its custom and polices and appropriately bring [his] claim of deliberate indifference under the Fourteenth Amendment . . . [Portes, Jr.] could satisfy the requirements of *Monell*" and § 1983. *See Waters*, 2022 WL 1001488, at *10 (allowing amendment of state law negligence claim to § 1983 claim).

As to Count VI, Portes, Jr. may amend the complaint once more but is reminded that separate causes of action must be separated into different counts, as a complaint may not commingle different claims for relief. *See Weiland*, 792 F.3d at 1320.

The Court further dismisses Portes, Sr., and Romina Portes's claims without prejudice, without leave to amend. *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction[.]"); *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Syst., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."); *See Valiente v. Publix Super-Markets, Inc.*, 2023 WL 3620538, at *7 (S.D. Fla. May 24, 2023) (dismissing complaint for lack of standing without prejudice, but without leave to amend, because the request

was procedurally defective and lacking in substantive support); *Ramirez v. Kraft Heinz Foods Co.*, 684 F. Supp. 3d 1253, 1261 (S.D. Fla. 2023) (dismissing without leave to amend because the request was not procedurally proper).

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Regions Security Services, Inc.'s Motion to Dismiss, **ECF No. [42]**, is **GRANTED**.

   a. Plaintiffs Juan Jose Portes, Sr. and Romina Portes's claims against Defendant Regions are **DISMISSED WITHOUT PREJUDICE** for lack of standing.

   b. Plaintiff Juan Jose Portes, Jr.'s claims against Defendant Regions are **DISMISSED**.

      i. Count VII against Regions is **DISMISSED WITHOUT PREJUDICE**.

      ii. Counts III and VI against Regions is **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall file a Second Amended Complaint setting forth Plaintiff's claims of negligence and infliction of emotional distress against Defendant Regions in accordance with the Court's Order **no later than July 15, 2025**.

2. Defendant City of Doral's Motion to Dismiss, **ECF No. [45]**, is **GRANTED**.

   a. Plaintiffs Juan Jose Portes, Sr. and Romina Portes's claims against Defendant City of Doral are **DISMISSED WITHOUT PREJUDICE** for lack of standing.

   b. Plaintiff Juan Jose Portes, Jr.'s claims against Defendant City of Doral are **DISMISSED**.

      i. Count VII against the City of Doral is **DISMISSED WITHOUT**

Case No. 24-cv-24652-BLOOM/Elfenbein

         **PREJUDICE**.

    ii.  Counts III and VI against the City of Doral is **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall file a Second Amended Complaint setting forth Plaintiff's claims of negligence and infliction of emotional distress against Defendant City of Doral in accordance with the Court's Order by **no later than July 15, 2025**.

3.  Defendants Ariel Gonzalez, Hakime St. Cyr, Jean Valez, and Javier Sarmiento's Motion to Dismiss, **ECF No. [46]**, is **GRANTED IN PART AND DENIED IN PART**.

    a.  Plaintiffs Juan Jose Portes, Sr. and Romina Portes's claims against Defendant Defendants Ariel Gonzalez, Hakime St. Cyr, Jean Valez, and Javier Sarmiento are **DISMISSED WITHOUT PREJUDICE** for lack of standing.

    b.  Plaintiff Juan Jose Portes, Jr.'s claims against Defendants Ariel Gonzalez, Hakime St. Cyr, Jean Valez, and Javier Sarmiento are **DISMISSED**.

        i.  Count VII against Defendants Ariel Gonzalez, Hakime St. Cyr, Jean Valez, and Javier Sarmiento, is **DISMISSED WITHOUT PREJUDICE**. Plaintiff shall file a Second Amended Complaint setting forth Plaintiff's claim of infliction of emotional distress against Defendants Ariel Gonzalez, Hakime St. Cyr, Jean Valez, and Javier Sarmiento in accordance with the Court's Order by **no later than July 15, 2025**.

      ii.  The Motion is **DENIED** as to Counts I and II.

Case No. 24-cv-24652-BLOOM/Elfenbein

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 3, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record